UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEREK W.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-CV-511-ACL |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM</u>**

Plaintiff Derek W. brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration Commissioner's denial of his application for

Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security

Income under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that Plaintiff was not disabled because he

was capable of performing work existing in significant numbers in the national economy.   This

matter is pending before the undersigned United States Magistrate Judge, with consent of the

parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the

parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

---

[1] On May 1, 2023, the Committee on Court Administration and Case Management of the
Judicial Conference of the United States issued a memorandum recommending that courts adopt
a local practice of using only the first name and last initial of any non-government party in Social
Security opinions.

Page **1** of **12**

## I.    Procedural History

Plaintiff filed his applications for benefits on June 13, 2022.  (Tr. 14.)   He claimed he became unable to work on April 19, 2022.  *Id.*   Plaintiff was 41 years of age on his alleged onset of disability date.   His applications were denied initially.  (Tr. 151-69, 173-87.)   On March 19, 2024, after a hearing, an ALJ found that Plaintiff was not disabled.  (Tr. 14-23.)   The Appeals Council denied Plaintiff's claim for review.   (Tr. 1-6.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Plaintiff argues that the ALJ "failed to satisfy Defendant's burden at Step 5."  (Doc. 13 at 4.)

## II.   The ALJ's Determination

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2024.   (Tr. 16.)   He found that Plaintiff has not engaged in substantial gainful activity since April 19, 2022, his alleged onset date.   *Id.*   Next, the ALJ concluded that Plaintiff had the following severe impairments: neuralgia status post hernia repair; right inguinal nerve entrapment syndrome; and chronic narcotic dependence.   (Tr. 17.) The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 18.)

As to Plaintiff's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk 4 hours of an 8-hour day, sit 6 hours in an 8-hour day; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch and crawl; and must avoid concentrated exposure to vibration.

Page **2** of **12**

*Id.*

The ALJ determined that a finding regarding Plaintiff's past relevant work was not material because he was under the age of 50.   (Tr. 22.)   He concluded that Plaintiff was capable of performing other work existing in significant numbers in the national economy, such as courier, food and beverage order clerk, and cashier.   (Tr. 23.)   The ALJ therefore found that Plaintiff has not been under a disability through the date of the decision.   *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 13, 2022, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

> Based on the application for supplemental security income filed on June 14, 2022, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III.   Applicable Law

### III.A.   Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted).    "Substantial evidence on the record as a

whole . . . requires a more scrutinizing analysis."    *Id.* (internal quotation marks and citations

omitted).

To determine whether the Commissioner's decision is supported by substantial evidence

on the record as a whole, the Court must review the entire administrative record and consider:

1.      The credibility findings made by the ALJ.

2.      The plaintiff's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the plaintiff's impairments.

6.      The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal

citations omitted).    The Court must also consider any evidence which fairly detracts from the

Commissioner's decision.    *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).    However, even though two inconsistent conclusions may be drawn from the

evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole.    *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).    "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343

F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional

tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

#### IV.   Discussion

In his sole claim, Plaintiff argues that the ALJ erred at step 5 of the sequential analysis in relying on testimony from the vocational expert ("VE") without resolving the apparent conflicts between the testimony and the Dictionary of Occupational Titles ("DOT").

"[A]n ALJ may not rely on a vocational expert's testimony about the requirements of a job if an 'apparent unresolved conflict' exists between that testimony and the job's description in the [DOT]." *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018) (*quoting Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014)).   When vocational evidence provided by a VE "is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE...evidence to support a determination or decision that the individual is or is not disabled."   SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).   If the VE's testimony "appears to conflict with the job requirements set forth in the relevant DOT listings and the ALJ did not resolve the conflict, 'the vocational expert's testimony is not substantial evidence to support a denial of benefits.'"   *Galloway v. Kijakazi*, 46 F.4th 686, 689 (8th Cir. 2022) (*quoting Stanton v. Comm'r, Soc. Sec. Admin*, 899 F.3d 555, 557 (8th Cir. 2018)).

Based on interrogatory answers from the VE, the ALJ found that Plaintiff could perform the following jobs: (1) courier, DOT Code 230.663-010, light, unskilled, SVP 2, with 10,000 jobs in the national economy; (2) food and beverage order clerk, DOT Code 209.567-14, sedentary, unskilled, SVP 2, with 10,000 jobs in the national economy; and (3) cashier, DOT Code 211.462-010, sedentary or light, unskilled, SVP 2, with 100,000 jobs in the national economy.   (Tr. 23.)

Plaintiff first notes that the DOT describes the courier job as a light job delivering items such as telegrams and documents.   Plaintiff states that he "questions how an individual who is

limited to standing and/or walking 4 hours in an 8-hour workday can perform this light job."

(Doc. 13 at 6.)   He argues that the ALJ failed to satisfy his affirmative duty to obtain a

reasonable explanation for this conflict, in violation of SSR 00-4p.

The DOT describes the job of courier as follows:

> Delivers messages, telegrams, documents, packages, and other items to business establishments and private homes, ***traveling on foot or by bicycle, motorcycle, automobile, or public conveyance***. May keep log of items received and delivered. May obtain receipts or payment for articles delivered. May service vehicle driven, such as checking fluid levels and replenishing fuel. May be designated according to item delivered, as Telegram Messenger.

*DOT* 230.663-010 (4th ed., rev. 1991), 1991 WL 672160 (emphasis added).

Plaintiff's limitation of standing and/or walking four hours in an eight-hour workday

would not preclude him from delivering items via automobile.   As Defendant points out,

Plaintiff testified that he has a driver's license and drives a car.   (Tr. 39, 314.)   Thus, there is no

conflict between the DOT description of the courier position and the VE's testimony that

Plaintiff was capable of performing this job.

Plaintiff next argues that the ALJ erred in relying on the cashier job, because the VE

failed to explain how he determined that there are sedentary cashier jobs that Plaintiff could

perform.   (Tr. 401.)

The cashier job is described in the DOT as follows:

> Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds or issue credit memorandums to customers for returned merchandise. May operate ticket-dispensing machine. May operate cash register with peripheral electronic data processing equipment by passing individual price coded items

Page **9** of **12**

across electronic scanner to record price, compile printed list, and display cost of customer purchase, tax, and rebates on monitor screen. May sell candy, cigarettes, gum, and gift certificates, and issue trading stamps. May be designated according to nature of establishment as Cafeteria Cashier (hotel & rest.); Cashier, Parking Lot (automotive ser.); Dining-Room Cashier (hotel & rest.); Service-Bar Cashier (hotel & rest.); Store Cashier (clerical); or according to type of account as Cashier, Credit (clerical); Cashier, Payments Received (clerical). May press numeric keys of computer corresponding to gasoline pump to reset meter on pump and to record amount of sale and be designated Cashier, Self-Service Gasoline (automotive ser.). May receive money, make change, and cash checks for sales personnel on same floor and be designated Floor Cashier (clerical). May make change for patrons at places of amusement other than gambling establishments and be designated Change-Booth Cashier (amuse. & rec.).

*DOT* 211.462-010 (4th ed., rev. 1991), 1991 WL 671840.

The VE stated in his interrogatory response that "sedentary unskilled cashiers are found in cafeterias, some retail stores, parking garages, parking lots, etc."  (Tr. 401.)   When asked if there were any conflicts between his answers and the DOT, the VE wrote, "[u]nskilled cashiers are classified at the light exertion level in the DOT.   That is an average.   In the actual labor market there are unskilled cashiers at the sedentary, light and medium exertion levels."  *Id.* The VE testified at the hearing that his testimony was based on his "professional judgment of how many of the jobs of that type of job exist, how many of those would actually meet these restrictions."  (Tr. 59.)

Plaintiff argues that the ALJ erred in accepting the VE's response, as the VE failed to explain how he determined there were sedentary cashier jobs in the "actual labor market."

Although the DOT generally controls, "[t]he DOT classifications may be rebutted ... with VE testimony which shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'"  *Montgomery v. Chater,* 69 F.3d 273, 276 (8th Cir. 1995) (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995)).   Here, the undersigned finds

that the VE adequately rebutted the DOT classification.   The VE acknowledged the conflict in the DOT due to the DOT classification of cashiers as light exertion level.   He explained that, based on his professional experience, the cashier position was also performed at the sedentary level.   A vocational expert may use his own experience to provide information on specific job requirements.   SSR 00-4P.   The VE did just this to resolve the discrepancy between the listed exertion level and the exertion level in practice, based on the VE's professional experience.

Plaintiff argues, in the alternative, that if the 100,000 cashier jobs were reduced to allow sitting, it would result in less than a significant number of jobs.   At the hearing, the VE explained that he had reduced the number of available cashier jobs to "cashiers in settings where the cashier can sit when they want to."   (Tr. 58.)   He testified that there were 100,000 such positions.   *Id.*   Thus, contrary to Plaintiff's argument, the 100,000 figure already reflected a reduction to only those positions that allowed sitting.

In his final argument, Plaintiff contends that the ALJ erred in relying on the VE's testimony that Plaintiff could perform the food and beverage order clerk job.

This position is described by the DOT as follows:

> Takes food and beverage orders over telephone or intercom system and records order on ticket: Records order and time received on ticket to ensure prompt service, using time-stamping device. Suggests menu items, and substitutions for items not available, and answers questions regarding food or service. Distributes order tickets or calls out order to kitchen employees. May collect charge vouchers and cash for service and keep record of transactions. May be designated according to type of order handled as Telephone-Order Clerk, Drive-In (hotel & rest.); Telephone-Order Clerk, Room Service (hotel & rest.).

*DOT* 209.567-014 (4th ed., rev. 1991), 1991 WL 671794.

Plaintiff argues that the DOT is "outdated" by asserting that the job of order clerk was last updated in 1977.   (Doc. 13 at 8.)   He does not identify any errors in the description. Plaintiff then cites different sources showing that only about ten percent of food and beverage

Page **11** of **12**

workers can decide whether they want to sit or stand.   *Id.*   Plaintiff contends that, if there are 10,000 food and beverage workers as the VE testified, Plaintiff would only be able to perform about 1,000 of these jobs.   The VE, however, had already reduced the number of available jobs to account for Plaintiff's "sedentary" limitation.   (Tr. 401.)   Further, as Defendant points out, Plaintiff was working part-time at a fast-food restaurant during the relevant period and testified that he quit this job only because he moved and the commute was too long.   (Tr. 16-17, 42.) Although the ALJ found that this work activity was not substantial gainful activity, the fact that Plaintiff was able to perform the position of food and beverage worker detracts from his argument.   Thus, Plaintiff's claim lacks merit.

In sum, there were no unresolved conflicts between the DOT and the VE's testimony. The VE's testimony regarding jobs a person with Plaintiff's RFC could perform, therefore, constituted substantial evidence on which the ALJ reasonably relied.   Thus, the Commissioner met his Step Five burden of showing that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of March, 2026.